```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| PEGGY HASSELL, Individually, and as | : | CONSOLIDATED UNDER |
| Personal Representative of the | : | MDL 875 |
| Estate of BILLIE L. HASSELL, Deceased | : | |
| | : | |
| | : | |
| v. | : | E.D. Pa. Civil Action No. |
| | : | 2:09-cv-90863-ER |
| | : | |
| THE BUDD COMPANY, et al. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                           April 5, 2019

Before the Court are the motions for summary judgment of railcar manufacturer Defendants The Budd Company ("Budd") (ECF No. 110) and Resco Holdings, L.L.C. ("Resco") (ECF No. 111) (together, "Defendants"), asserting that the claims of Plaintiff Peggy Hassell are pre-empted by federal statutes intended to regulate the entire fields of locomotive equipment and train safety, specifically, the Locomotive Inspection Act ("LIA") and the Safety Appliance Act ("SAA"). Also pending are: motions for judgment on the pleadings by these same Defendants, on the same basis (i.e., pre-emption of Plaintiff's claims) (ECF Nos. 107, 108, and 109), a Daubert motion filed by Plaintiff seeking to exclude an expert report and certain testimony of Francis W. Weir, Ph.D. (ECF No. 113), and a motion by Plaintiff seeking leave of court to amend her complaint to add alternative causes of action. (ECF No. 114).

I.  **PROCEDURAL BACKGROUND AND HISTORY**

Plaintiff initially filed this case in state court in Texas, asserting against various defendants Texas state law claims of negligence and strict liability (as well as loss of consortium) by Peggy Hassell, individually and as personal representative of the estate of Billie Hassell. Plaintiff alleged that Decedent died as a result of occupational asbestos exposure from railway equipment. The case was removed to the United States District Court for the Southern District of Texas on grounds of federal question jurisdiction. It was subsequently transferred to this Court, where it became part of MDL-875. (ECF Nos. 1 and 7-9).

This Court dismissed Defendants on the grounds that Plaintiff's claims were pre-empted by the LIA after concluding that the asbestos covered pipes at issue were attached to the locomotive.[1] (ECF No. 70). The Third Circuit Court of Appeals vacated this Court's dismissal order and the case was remanded to this Court for further proceedings. (ECF No. 77); In re Asbestos Prod. Liab. Litig. (No. VI) ("Hassell"), 822 F.3d 125 (3d Cir. 2016). The Third Circuit's decision pertained to this Court's procedural handling of the motions to dismiss and did

---

[1] In connection with the Court's dismissal order, the Court did not consider the SAA or any possible pre-emptive effect it might have on Plaintiff's claims. Hassell v. Budd Co., No. 09-01534, 2014 WL 3955061, at *1 (E.D. Pa. Feb. 27, 2014).

not directly or fully address the merits of the motions regarding the pre-emptive effect of the LIA or SAA. Specifically, the Third Circuit held that this Court had converted the motions to dismiss into motions for summary judgment but improperly applied the summary judgment standard. 822 F.3d at 135. The Third Circuit held that this Court did not view the facts in the light most favorable to Plaintiff and concluded that Plaintiff had properly raised a genuine dispute of material fact regarding whether the pipes at issue were attached to the locomotive. Id. Thereafter, additional limited discovery was conducted (ECF No. 79), and the present motions were filed.

## II. SUBSTANTIVE BACKGROUND AND HISTORY

Plaintiff alleges that Decedent, who worked in Texas as an electrician from 1945 until 1989, was exposed to asbestos from insulation that was incorporated into passenger railcars manufactured by Defendants from 1945 until the mid to late 1970s and then sold to his employer, the Atchison Topeka & Santa Fe Railroad. Mr. Hassell died in May of 2009 from malignant mesothelioma. Plaintiff alleges that asbestos from pipe and "arc chute" insulation in the passenger cars manufactured by Defendants was a cause of his mesothelioma and subsequent death.

Plaintiff's current complaint asserts Texas state law claims sounding in (1) strict product liability, (2) negligence,

3

(3) loss of consortium, and (4) punitive damages. (ECF No. 9). Plaintiff's proposed amended complaint asserts all of these claims and also proposes a new claim for (5) per se negligence[2] (as evidenced by alleged violations of the LIA and SAA). (ECF No. 114-1).

**III.  LEGAL STANDARDS**

    A.   <u>Substantive and Procedural Matters</u>

Generally, in matters involving substantive law, such as the pre-emption of state law, a federal court applies federal law as construed by the United States Court of Appeals for the circuit in which that court is located. <u>See</u> <u>Various Plaintiffs v. Various Defendants ("Oil Field Cases")</u>, 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009).

In multidistrict litigation involving cases premised on federal question jurisdiction, "on matters of procedure, the transferee court must apply federal law as interpreted by the court of the district where the transferee court sits." <u>Id.</u> at

---

[2] The new claim proposed by Plaintiff would be asserted <u>only</u> in the <u>alternative</u> (i.e., if the claims for negligence and strict liability were pre-empted) and would assert that the asbestos products at issue were "locomotive equipment and appurtenances" or train "safety appliances" (as the terms are defined by the LIA and SAA) – and that Defendants violated those statutes by selling Mr. Hassell's employer appurtenances/ appliances that were "defective and in unsafe condition and which were unsafe to work on or about without unnecessary peril to life or limb." (Pl. Prop. Am. Complaint at ¶¶ 23-30, ECF No. 114-1).

4

362. Therefore, in addressing the substantive and procedural matters herein, the Court will apply federal law as interpreted by the Third Circuit Court of Appeals.

    B.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." <u>Pignataro v. Port Auth. of N.Y. & N.J.</u>, 593 F.3d 265, 268 (3d Cir. 2010) (citing <u>Reliance Ins. Co. v. Moessner</u>, 121 F.3d 895, 900 (3d Cir.

5

1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (citing Fed. R. Civ. P. 56).

    C.    Locomotive Inspection Act (LIA)

The LIA, 49 U.S.C. § 20701 et seq., sets forth safety standards applicable to all "locomotives," their "tender," and "all parts and appurtenances thereto." 49 U.S.C. § 20701; see also Kurns v. R.R. Friction Prod. Corp., 565 U.S. 625, 629–30 (2012). "[N]either the LIA nor the SAAs provide for private enforcement; instead, railroad employees can only enforce those statutes through the FELA." Delaware & Hudson Ry. Co. v. Knoedler Mfrs., Inc., 781 F.3d 656, 663 (3d Cir. 2015).

    D.    Safety Appliance Act (SAA)

The SAA, 49 U.S.C. § 20301 et seq., was originally enacted in 1893 (prior to the LIA) and has since been amended. Hassell, 822 F.3d at 128. Its purpose is to protect employees working on railways by setting certain safety standards, mandating and regulating specific safety equipment, and imposing strict liability on rail carriers for injuries caused by any violation thereof. Eckert v. Aliquippa & S. R. Co., 828 F.2d

183, 185-86 (3d Cir. 1987); Delaware & Hudson Ry. Co., 781 F.3d at 659, 663. The SAA (unlike the LIA) is not limited to regulation of locomotive equipment and, instead, also regulates other aspects of trains, such as equipment on or in passenger railcars. See 49 U.S.C. § 20302; Gilvary v. Cuyahoga Valley Ry. Co., 292 U.S. 57, 60 (1934); Delaware & Hudson Ry. Co., 781 F.3d at 663 n.9.

E. Other Claims (Loss of Consortium and Punitive Damages)

Texas law recognizes a loss-of-consortium claim for spouses injured by intentional or negligent conduct of others, and this claim is a derivative claim. See Whittlesey v. Miller, 572 S.W.2d 665, 668 (Tex. 1978). It also recognizes a claim for punitive damages in tort cases involving malicious or grossly negligent conduct. Safeshred, Inc. v. Martinez, 365 S.W.3d 655, 659 (Tex. 2012).

F. Pre-Emption of State Law Claims By LIA

In its decision in Kurns, the United States Supreme Court considered the issue of "whether the LIA pre-empts [injured former railroad employees'] state-law claims that [manufacturers/distributors of asbestos-containing brake shoes, locomotives, and locomotive engine valves] defectively designed locomotive parts and failed to warn [the employee] of dangers associated with those parts." Kurns, 565 U.S. at 630. The Court

held that "[i]n light of this Court's prior decision in Napier [v. Atlantic Coast Line R. Co., 272 U.S. 605 (1926)], we conclude that petitioners' claims are pre-empted." Id.

The Supreme Court recognized that "[w]e do not, however, address the LIA's pre-emptive effect on a clean slate, because this Court addressed that issue 85 years ago in Napier." Id. at 631. It continued, stating that, "[t]o determine whether the state requirements were pre-empted, this Court [in Napier] asked whether the LIA 'manifest[s] the intention to occupy the entire field of regulating locomotive equipment[.]' The Court answered that question in the affirmative." Id. (quoting Napier, 272 U.S. at 613). The Court in Kurns then concluded that because both plaintiffs' design defect and failure-to-warn claims were directed at the equipment of locomotives, they fell within the pre-empted field defined by Napier. Id. at 634-38.

Upon appeal of this Court's earlier dismissal of the case on the grounds of pre-emption by the LIA, the Third Circuit provided that "[n]either Napier nor Kurns had to determine precisely which mechanical components of a train qualify as the 'equipment of locomotives' because the answer was obvious in both cases." Hassell, 822 F.3d at 132. It continued that "neither case had to confront the distinction between locomotive equipment and equipment belonging to some other railroad apparatus — in this case, passenger railcars." Id.

G. Pre-Emption of State Law Claims by SAA

In addressing the issue of pre-emption of state law claims pursuant to the SAA, the Third Circuit stated that "[w]ith respect to preemption, both the LIA and the SAAs have broad preemptive scope." Delaware & Hudson Ry. Co., 781 F.3d at 664 (citing Kurns, 565 U.S. at 634). However, the court noted that "Napier suggested that the scope of the SAAs' preemption is limited to the specific equipment listed in the statute." Id. at 663-64 (citing Napier, 272 U.S. at 611).

**IV. DISCUSSION**

A. Plaintiff's *Daubert* Motion to Exclude Expert Weir

As a preliminary matter, the Court addresses Plaintiff's motion to exclude the expert testimony (and October 2016 Supplemental Report) of Francis W. Weir, Ph.D. This MDL Court has routinely held that Daubert issues, unless essential to the determination of the issues raised at the summary judgment stage, are more properly addressed by the trial judge after remand to the transferor court. See, e.g., Bouchard v. CBS Corp., No. 11-66270, 2012 WL 5462612 (E.D. Pa. Oct. 2, 2012); Millsaps v. Aluminum Co. of America, No. 10-84924, 2013 WL 5544053 (E.D. Pa. Aug. 8, 2013).

In the case at hand, the Court concludes that the outcome of Defendants' motions, as well as Plaintiff's motion to

amend her complaint, is the same regardless of the outcome of Plaintiff's pending Daubert motion. For this reason, the Court declines to decide the Daubert motion and, instead, grants leave for Plaintiff to refile the motion in the transferor court after remand, for decision by the trial judge. In doing so, the Court expresses no opinion on the merits of the motion.

B. Pre-Emption of Plaintiff's Claims

Defendants assert two theories for pre-emption of Plaintiff's claims: (1) pre-emption pursuant to the LIA, and (2) pre-emption pursuant to the SAA. The Court will address both arguments in turn.

1. LIA Pre-Emption

Defendants assert that Plaintiff's state law claims against them are pre-empted by the LIA, as indicated in Kurns and Southern Railway Co. v. Lunsford, 297 U.S. 398 (1936), because the asbestos at issue – although existing under the passenger railcars – was a "locomotive appurtenance" since the insulation was part of a train-wide system that originated in – and was powered by – the locomotive. It is well-settled that, under the LIA, the federal government has the exclusive power to regulate "the design, the construction and the material of every part of the locomotive and tender and of all appurtenances," Napier, 272 U.S. at 611 (emphasis added); 49 U.S.C. § 20701.

Plaintiff contends that asbestos insulation used under (or in) passenger cars was (a) not connected to a steam line (and, thus did not originate in – or extend from – the locomotive) and (b) was, instead, <u>incapable</u> of physical attachment or connection to a locomotive.

The question before the Court then (with regard to LIA pre-emption) – as framed by <u>Napier</u>, <u>Kurns</u>, and the parties' contentions – is: do the claims at issue fall anywhere within the "field of regulating locomotive equipment," which equipment includes (1) "locomotives," (2) their "tender," and (3) "all parts and appurtenances thereto." If so, the claims are pre-empted by the LIA. In order to answer this question, the Court considers each of Plaintiff's claims separately.

      a.  <u>Strict Liability Claims</u>

Plaintiff's strict liability claims are pre-empted by the LIA if the insulation was attached to the locomotive or its parts and appurtenances. Whether this insulation is "locomotive equipment" is a question of law for the Court to decide. <u>See</u>, <u>e.g.</u>, <u>Kurns</u>, 565 U.S. at 635; <u>Hassell</u>, 2014 WL 3955061, at *1; <u>Perry v. A.W. Chesterton, Inc.</u>, 985 F. Supp. 2d 669, 674, n.5 (E.D. Pa. 2013). However, whether the insulation and piping at issue were actually attached to the locomotive (such that it would legally be "locomotive equipment") is a question of fact. <u>See</u> <u>Hassell</u>, 822 F.3d at 135.

Plaintiff alleges exposure to asbestos from, inter alia, insulation surrounding pipes running underneath the passenger railcars. Defendants assert that any strict liability claims arising from this alleged exposure are pre-empted, since the pipes and insulation were all part of one continuous, interconnected piping system that ran underneath the train (including underneath the passenger cars) but that connected to (and, in fact, originated in) the locomotive.

Plaintiff limits her claims to those premised on insulation that was <u>not</u> also used on or in the locomotive. Specifically, her brief in opposition to summary judgment (1) limits her claims to those arising from steam, water, and air conditioning pipes running underneath the passenger railcars, as well as insulation lining the "arc chutes" in the floor of the passenger railcars, wherein the brakes "pick up" the generator, and (2) asserts that "steam generator cars [(as opposed to steam pipes originating from the locomotive)] were used for the purpose of passenger car heating on the Santa Fe [Railroad trains]." (Pl. Opp. at 43, ECF No. 116-1).

The Court concludes that those pipes originating in the locomotive involve "locomotive equipment" and claims regarding them are pre-empted by the LIA pursuant to <u>Kurns</u>. As stated, these are claims that Plaintiff disavows. However, pipes originating in a steam generator car or that are otherwise self-

12

contained to each car, do <u>not</u> involve "locomotive equipment" and are, therefore, <u>not</u> pre-empted by the LIA. This holding is consistent with this Court's earlier decision in this case. <u>Hassell</u>, 2014 WL 3955061, at *1. However, there is a factual dispute as to the origin of the pipes at issue and whether they connect to the locomotive. Both parties present evidence to back their claims. Given this dispute, at this stage of the proceedings, and viewing the facts in the light most favorable to Plaintiff, the Court finds that there is a genuine dispute as to a material fact which precludes summary judgment for the Defendants under these circumstances. The case will be remanded to the transferor court so that the fact finder may consider this issue.[3]

Regarding the insulation lining the "arc chutes" in the floor of the passenger railcars, Plaintiff concedes that this asbestos insulation was part of the braking system on the passenger cars. Thus, for the reasons set forth in this Court's decision in <u>Perry</u>, the Court concludes that these claims are pre-empted by the LIA. 985 F. Supp. 2d at 673-76 (holding claims arising from asbestos in brake shoes on passenger cars were pre-empted by the LIA because: (1) they were an integral part of a completed locomotive; and (2) it would not make sense for a

---

[3] The Court will issue a rule to show cause why the case should not be remanded no earlier than two weeks after the date of this memorandum.

federal agency to have exclusive control over regulating locomotive brake shoes while it did not have exclusive authority to regulate the companion brake shoes existing on the railcars on that same train).

      b.  <u>Negligence Claims</u>

The Court has carefully considered Plaintiff's negligence claims in light of the Supreme Court's decision in <u>Kurns</u>. The Court concludes that under <u>Kurns</u>, claims brought pursuant to a negligence cause of action (and, in particular, common law negligent failure to warn claims) are pre-empted (or not pre-empted) to the same extent as the parallel strict liability claims.

Although this Court recognizes that there is some ambiguity regarding the applicability of <u>Kurns</u> to common law negligence claims, it concludes that - based on <u>Kurns</u>' (1) use of the terminology "common-law claims for defective design and failure to warn" (and apparent distinction therein),[4] and (2) repeated reference to "common-law claims" and "common law duties"[5] – that the <u>Kurns</u> majority intended to address both strict product liability claims (i.e., defective warning claims) and common law negligence claims (i.e., negligent failure to

---

[4]    <u>Kurns</u>, 565 U.S. at 634.

[5]    <u>Id.</u> at 637.

14

warn claims) pertaining to the alleged failure to warn – and to pre-empt (or not pre-empt) them to the same extent.

Applying the teachings of Kurns, the Court concludes that: (1) claims arising from insulation used in connection with pipes originating in the train's locomotive involve "locomotive equipment" and are pre-empted by the LIA; but (2) claims arising from insulation used in connection with pipes that did not originate in the train's locomotive are not "locomotive equipment" and are, therefore, not pre-empted by the LIA. However, Plaintiff's negligence claims arising from insulation lining that Mr. Hassell described as the "arc chutes" involve "locomotive equipment" and are pre-empted by the LIA.

        c. <u>Other Claims (Loss of Consortium and Punitive Damages)</u>

Because Plaintiff's loss of consortium and punitive damages claims are both derivative claims, the Court concludes that they are not directly subject to a pre-emption analysis under the LIA, but are, instead co-existent with Plaintiff's claims for strict liability and negligence. See Whittlesey, 572 S.W.2d at 668 (loss of consortium); Safeshred, Inc., 365 S.W.3d at 659 (punitive damages). As such, to the extent that Plaintiff's claims for strict liability and negligence have survived summary judgment, her loss of consortium and punitive damages claims have survived as well.

15

2. SAA Pre-Emption

The Court concludes that none of Plaintiff's claims are pre-empted by the SAA. The requirements of the SAA are specific, and the required safety gear mandated by it is limited. Napier, 272 U.S. at 611; 49 U.S.C. § 20302. As noted by the Third Circuit Court of Appeals, "[t]he SAAs differ from the LIA in that they expressly require certain safety equipment to be used on railroad carriers, such as automatic couplers, efficient hand brakes, secure ladders with handholds or grab irons, and power brakes sufficient to stop the train." Delaware & Hudson Ry. Co., 781 F.3d at 663 n.9; see also id. at 663-64 (providing that "Napier suggested that the scope of the SAAs' preemption is limited to the specific equipment listed in the statute"). Pipe insulation is not one of items listed in the SAA. Thus, Plaintiff's claims regarding such insulation are not pre-empted. For this reason, the opinion of Dr. Weir that the insulation was installed for safety reasons is immaterial to the pre-emption analysis.

C. Motion for Leave to File an Amended Complaint to Add New Claims (for Per Se Negligence)

Because this Court has concluded that the LIA and the SAA do not pre-empt the claims central to Plaintiff's case, the motion to amend the complaint to add alternative claims in the

event her primary claims were pre-empted, is moot and will be denied as such.

### D. Summary Judgment Motions

To the extent that Plaintiff's claims are pre-empted (as explained above), Defendants' motions for summary judgment on the basis of pre-emption are granted. To the extent that Plaintiff's claims are not pre-empted, Defendants' motions for summary judgment are denied.

### E. Motions for Judgment on the Pleadings

Because Defendants' various motions for judgment on the pleadings are now moot in light of this Court's disposition of Defendants' motions for summary judgment on the same grounds, Defendants' motions for judgment on the pleadings are denied.

## V. CONCLUSION

Defendants' motions for summary judgment are granted in part and denied in part as described above. Their motions for judgments on the pleadings are denied. Plaintiff's motion for leave to amend her Complaint is denied. Plaintiff's Daubert motion seeking to exclude the testimony of Francis W. Weir, Ph.D. is denied, with leave to refile in the transferor court after remand.

An appropriate Order follows.